**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEROME JUNIOR WASHINGTON** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 16-3424** |
| | : | |
| **LINK, SCI-GRATERFORD** | : | |
| **SUPERINTENDENT, MRS., et al.** | : | |

**McHUGH, J.**                                                  **January 11, 2024**

**MEMORANDUM**

This is a pro se civil rights action in which Plaintiff Jerome Washington contends that officers of the Pennsylvania Department of Corrections confiscated or destroyed his personal property in violation of his constitutional rights. After a long and complicated procedural history, this case warrants resolution. Mr. Washington may state a colorable First Amendment claim against some of the Defendants, but he failed to exhaust the available grievance process as to this claim before filing suit. Mr. Washington also cannot maintain his claims under the Fifth, Eighth, Ninth, and Fourteenth Amendments as a matter of law. Summary judgment will therefore be granted to Defendants and his claims must be dismissed.

## I.    Factual Background

Mr. Washington was formerly incarcerated at Pennsylvania State Correctional Institution (SCI) Graterford. Am. Compl. (ECF 8). He alleges that personal property from his assigned cell, including a draft novel, hundreds of his drawings, and letters from his family, were wrongfully confiscated or destroyed on two occasions. *Id.* The first incident occurred on April 24, 2015, the day after Mr. Washington was moved to a Psychiatric Observation Cell (POC). Defs.' Response, Ex. A at 9:20-14:9 (ECF 88) ["Washington Dep."]. Because Mr. Washington was being moved to a new unit, the institution tasked an official, Sergeant Stephany, with packing up all of the

personal belongings in Mr. Washington's cell.  *Id.*   While doing so, Stephany found and confiscated ten images of pornography.  *Id.* at 14:14-16:3.  Stephany filed a corresponding misconduct slip regarding the illicit images soon after their discovery.  *Id.*  Mr. Washington does not dispute that he had pornography in his cell, but he claims that he never received documentation for the other personal effects that Stephany took from his cell.[1]

Soon after Mr. Washington's move to the POC in April 2015, he was then transferred to a Restrictive Housing Unit (RHU) within SCI-Graterford, where he remained for roughly nine months until his eventual transfer to SCI-Chester.  Washington Dep. at 34:1-22, 70:21.  While housed in the RHU, Mr. Washington was not allowed to access the property that Sergeant Stephany had packed from his original cell.  *Id.*  It was not until February 2016 – immediately before his transfer to SCI-Chester – that Mr. Washington was finally able to collect his property.  *Id.* at 32:21-39:14.  But when he was brought to the property room to collect it, he contends that most of his property was missing, including his novel, family mail, and the children's books and cartoons that he had created.  *Id.*  Mr. Washington refused to sign for any property in light of the volume of items that he believed to be missing.  *Id.*  He was then transferred to SCI-Chester.  *Id.*

Mr. Washington asserts that Sergeant Stephany, the officer charged with packing up his cell, wrongfully confiscated or destroyed his property.  He claims that Sergeant Stephany did this to vindicate Sergeant Rozich, an officer against whom Mr. Washington brought a lawsuit in 2013 on unrelated charges.  Washington claims that Stephany and Rozich were friends, and that

---

[1] Mr. Washington was ultimately found guilty of a disciplinary charge related to possession of pornography in May 2015, and his subsequent appeal was rejected.  Defs.' Mot. to Dismiss, DuPont Decl. ¶¶ 7-14 (ECF 17).  Washington makes clear that he is not challenging the outcome of this disciplinary proceeding in this lawsuit, and he readily admits that he had pornography in his cell.  *See* Washington Dep. at 30:1-32:3 (admitting he had pornography in his cell); *id.* at 41:10-11 ("But the misconduct had nothing to do with my claims.").  Instead, Washington seeks only to recover his personal and artistic property that he asserts was wrongfully confiscated or destroyed in the process of packing his cell.

Stephany had testified in support of Rozich in the 2013 case.  Mr. Washington thus suggests that Stephany acted against him act in retaliation for suing Rozich.  Am. Compl.; Washington Dep. at 12:25-13:20.

Mr. Washington's second alleged incident of property loss occurred in January 2016, a month before he was brought to the property room and learned of the first incident with Sergeant Stephany.  On January 16, Mr. Washington was temporarily moved from the RHU to a medical unit, and officers once again packed his personal property without him.  Am. Compl.; Washington Dep. at 50:25-7, 52:11-56:17.  This time, Washington claims that Sergeant Petters and Officer Voorhees threw most of his property in a trash can, keeping just one box of his things.  Washington Dep. at 56:18-25.  Washington states that he knows of their involvement because (1) Petters left a signed confiscation slip on his bed and (2) Petters came back to his cell on January 20, and told Mr. Washington that he and Voorhees destroyed his property in part because Washington "file[s] lawsuits and stuff like that."  *Id.* at 56:12-59:17, 67:16-23.  Washington also represented in his deposition that other individuals on his cell block saw Petters and Voorhees throw his property in a trash can.  *Id.*

Washington maintains that Petters and Voorhees, like Stephany, destroyed his property in retaliation for his lawsuit against Rozich.  *Id.* at 65:25-66:10.  Washington alleges that Rozich and these officers are "pals," that Rozich has been encouraging Petters to treat him poorly since 2013, and that Voorhees consistently followed Petters' lead.  *Id.* at 66:10-69:15.

Mr. Washington filed a grievance about this second property loss on January 26, 2016, while he was still housed at SCI-Graterford.  Defs.' Mot. to Dismiss, Ex. D at 3 (ECF 17).  That grievance was rejected by administrator Wendy Shaylor just two days later, *id.* at 2, but Mr. Washington purportedly did not receive that rejection until he was relocated to SCI-Chester in

early February.  Washington Dep. at 83:22-84:8.  Shaylor rejected the grievance for being illegible and for failing to include proper documentation.  Defs.' Mot. to Dismiss, Ex. D at 2 (ECF 17).  Mr. Washington later claimed in his deposition that he could not have attached the proper documentation because he never received an inventory sheet from Petters and Voorhees. Washington Dep. at 86:12-24, 87:5-88:23.

Mr. Washington states that he appealed the rejection to the facility manager at SCI-Chester, but that his appeal was rejected because the incident took place at SCI-Graterford.  *Id.* at 86:1-8, 88:4-17, 90:12-92:1.  Presumably out of exasperation, Mr. Washington then sent a letter and five separate grievances to Michael Bell, an employee of the Secretary's Office of Inmate Grievance and Appeals.  *Id.* at 75:17-8, 86:4-8, 93:5-7.  Mr. Bell responded on February 23, 2016, urging Mr. Washington to follow the proper grievance appeal policy.  Defs.' Mot. to Dismiss, Ex. D at 6 (ECF 17).  At his deposition, Mr. Washington stated repeatedly that, after receiving Mr. Bell's response, he sent a letter and appeal to the SCI-Graterford facility manager pursuant to the grievance procedure.  Washington Dep. at 86:8-10, 93:7-12, 94:15-22.  Defendants claim that no such appeal was ever received, and neither party appears to have a corresponding record.

## II.    Procedural History[2]

I granted Defendants' Motion to Dismiss in 2018.  ECF 25.  Mr. Washington then filed a Motion for Reconsideration, which I denied.  ECF 27.  On appeal, the Third Circuit remanded the case for further explanation.  ECF 35.  I was not confident that the necessary explanation could be provided without discovery.  Therefore, a scheduling order was issued, discovery was taken and

---

[2] This case was reassigned to me following the death of Judge James Knoll Gardner.

completed, and the case continued on track to proceed to trial when the Court's docket allowed.[3]

But, in March 2023, when the Court announced its intention to seek a trial date, the Commonwealth

unexpectedly filed a response in opposition to Mr. Washington's motion for reconsideration.  ECF

88.  I then gave Mr. Washington forty-five days to respond.  ECF 89.  Thereafter, I gave the parties

notice that, because the Commonwealth's response was, for practical purposes, a motion for

summary judgment that relied on evidence in the record outside of the pleadings, I would treat the

motion as such.  I gave the parties an additional month (and several extensions they requested) to

file any pertinent material for my decision.  ECF 92.  I also notified the parties that, when

considering the Commonwealth's motion, I would address the issue of exhaustion.  ECF 93.  The

Commonwealth filed a supplemental brief, ECF 100, and Mr. Washington made numerous

filings,[4] including his own cross motion for summary judgment, ECF 108, which first became ripe

in early October 2023.

---

[3] Mr. Washington has repeatedly communicated his displeasure with a lack of any resolution of this action.  When this case would have first ripened for trial, the COVID-19 pandemic hit, resulting in the suspension of most live proceedings.  During that same time, the Federal Detention Center in Philadelphia refused transfers of civil plaintiffs in custody as a public health measure.  When the pandemic eased, criminal trials took priority.  On my docket, this included two dormant older cases unexpectedly re-opened after fugitives were apprehended, *USA v. Washington*, 16-405-2, resolved by trial in December 2023, and *USA v. Tietolman*, 14-465, scheduled for trial in January 2024.  Ordinarily, a civil case can be listed as back-up to criminal matters, because criminal cases frequently require multiple listings.  But that is not so where a plaintiff is in custody and must be transferred by writ: a date certain is necessary.  Moreover, Mr. Washington needs to be accompanied by state correctional personnel who sit through trial, at a time when staffing shortages in the Pennsylvania Department of Corrections remain an acute concern.  Legis. Budget and Fin. Comm., *Dep't of Corrs. – Safety Related Staffing Plans*, at S-6 (Oct. 2023), https://lbfc.legis.state.pa.us/Resources/Documents/Reports/751.pdf [https://perma.cc/83QD-DCPM].  This requires additional coordination with state authorities.

[4] Over the life of this case, Mr. Washington has docketed a total of 57 filings – 32 styled as formal motions, and 25 as letters, notices, or requests.  Among them was a motion to "Remove Judge Eduardo Robreno from his Position."  ECF 57.  Judge Robreno was no point  involved in this case.

## III.    Legal Standard

Motions for summary judgment are governed by the well-established standard set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV.    Discussion

Mr. Washington brings claims under the First, Fifth, Eighth, and Fourteenth Amendments against Secretary Link, Sergeant Stephany, Sergeant Petters, and Officer Voorhees.  Preliminarily, as set forth in my previous memorandum, Mr. Washington has provided no facts supporting Secretary Link's involvement in the conduct for which he complains.  ECF 24 at 3.  Because there is no *respondeat superior* liability under 42 U.S.C. § 1983, summary judgment is therefore warranted on all claims against her.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

As to the remaining Defendants, I conclude that the only colorable claim is one for First Amendment retaliation, but that Mr. Washington failed to exhaust this claim.  I will first explain why Defendants have met their burden to show Mr. Washington's failure to exhaust.  Then, I will address Mr. Washington's remaining claims on the merits.

### A.  First Amendment Retaliation

It is well-established that prison officials cannot retaliate against incarcerated people for the exercise of their First Amendment rights.  *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990). To state a claim for First Amendment retaliation, an incarcerated person must allege that he: (1) engaged in constitutionally protected conduct, (2) "suffered some 'adverse action' at the hands of the prison officials," and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.

2001) (citations omitted).  Mr. Washington makes such allegations here, but Defendants contend that his claims are barred for failure to exhaust.

*Exhaustion*

The Prison Litigation Reform Act of 1995 ("PLRA") prevents prisoners from filing suits under federal law about prison conditions "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).  Proper exhaustion requires an incarcerated person to "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit in federal court.  *Woodford*, 548 U.S. at 88.

Exhaustion is mandatory, *Ross v. Blake*, 578 U.S. 632, 638 (2016), and applies to all suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It is "a non-jurisdictional prerequisite" to a civil suit and, for that reason, "constitutes a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."  *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (emphasis, citation, and internal quotation omitted); *see also Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) ("[E]xhaustion constitutes a preliminary issue for which no right to a jury trial exists.").  The Supreme Court has held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford*, 548 U.S. at 90-91; *see also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion."); *accord Williams v. Beard*, 482 F.3d at 639.

Because exhaustion is an affirmative defense, Defendants must show that Mr. Washington failed to exhaust his claims to prevail. *Small*, 728 F.3d at 268. If Defendants can establish that Mr. Washington "failed to resort to administrative remedies, the onus falls on [him] to show that such remedies were unavailable to him." *Rinaldi*, 904 F.3d at 268. The administrative process is considered "unavailable" if an institution fails to timely respond to a grievance or ignores an incarcerated person's follow-up request for a decision. *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2018).

SCI-Graterford's Inmate Grievance System, which was in effect during the relevant time, is detailed in the Pennsylvania Department of Corrections Policy Statement DC-ADM 804.[5] According to the policy, a grievance must be submitted to the facility's designated coordinator within fifteen working days of the event at issue. The grievance must be signed and dated, and it must include a legible and understandable statement of facts not to exceed two pages. Grievances based on different events must be presented separately, and grievances related to missing property must include additional documentation such as a Personal Property Inventory Sheet or a Confiscated Items Receipt. The policy also includes appeal procedures for when a grievance is rejected, which must be initiated within fifteen days of the rejection.

Here, as to the first alleged incident involving Sergeant Stephany, there is no evidence in the record that Mr. Washington has exhausted his claims for the purported destruction of his property. When he appealed the misconduct charge arising from Stephany's confiscation of pornography on April 24, 2015, he did not incorporate any claim for the loss or destruction of his non-contraband personal property. Defs.' Mot. to Dismiss, Ex. B at 2 (ECF 17). Mr. Washington

---

[5] Pa. Dep't of Corrs., *Inmate Grievance Sys.* (May 1, 2015), https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf [https://perma.cc/7XJX-KMGU].

credibly explains that this was because he did not learn that his creative work and letters were missing until February 1, 2016.  Unfortunately for Mr. Washington, his lack of knowledge only excuses his initial failure to grieve.  He does not contend that he filed a grievance upon learning of the loss in February 2016, and prison records reflect no such grievance.  This lawsuit was his first attempt to complain of the alleged confiscation.  Because he failed to exhaust his claims against Sergeant Stephany, summary judgment is required on his related claim for First Amendment retaliation.[6]

As to the second alleged incident, involving Petters and Voorhees, Defendants raise two arguments on exhaustion.  Defs.' Br. at 3 (ECF 100).  First, they argue that Mr. Washington failed to appeal the denial of his initial grievance.  But on this point, a material dispute of fact remains.  Mr. Washington testified that he appealed the rejection of his grievance to the SCI-Graterford facility manager and never received a response.  Washington Dep. at 97:13-103:25.  If so, any further administrative process would have been unavailable to him.  *Robinson*, 831 F.3d at 154.  Defendants strenuously deny that Mr. Washington Generally, an inmate's testimony is sufficient to create an issue of fact on exhaustion, but the court can nonetheless resolve such a dispute at this stage by looking to the "reliability of the Prison's recordkeeping system."  *Paladino v. Newsome*, 885 F.3d 203, 209, 211 (3d Cir. 2018).  But despite having ample opportunity to do so, Defendants have inexplicably failed to supplement the record with evidence of the reliability of SCI-Graterford's record-keeping.  Absent such evidence, I cannot resolve the dispute over whether an

---

[6] The defense also contends that there is no evidence in the record to support an inference that Sergeant Stephany's conduct was in retaliation for the exercise of any constitutional right, but only Mr. Washington's speculation.  That argument appears to have substantial merit, but I need not consider it in depth having found no exhaustion.

appeal was taken.  *See D'Costa v. Plaza*, No. 15-5310, 2019 WL 856780, at *6 (D.N.J. Feb. 14, 2019).

Defendants' second argument is that Mr. Washington did not exhaust his grievance against Petters and Voorhees because he failed to attach required documentation under SCI-Graterford's policy.  This argument has merit.  As noted above, "proper" exhaustion requires an incarcerated plaintiff to meet the procedural requirements of the institution's grievance process.  Here, because Mr. Washington was grieving a property loss, he was required to provide some accompanying documentation, such as a Personal Property Inventory Sheet or a Confiscated Items Receipt.  This requirement is stated in Policy Statement DC-ADM 804 at 1-3, and is reiterated on SCI-Graterford's Grievance Rejection Form.  Defs.' Mot. to Dismiss, Ex. D at 2 (ECF 17).  Mr. Washington does not dispute that he failed to include any such documentation, despite acknowledging that he was given a Confiscated Items Receipt.  Washington Dep. at 86:12-88:23.[7] The fact that he could not attach all the relevant documentation listed in the policy does not excuse his failure to attach the documentation indisputably in his possession, and the policy is couched in the disjunctive, allowing any of the documentation as support.  Pa. Dep't of Corrs., *Inmate Grievance Sys.* (May 1, 2015), p. 1-3, ¶ 17. And Mr. Washington was certainly familiar with the grievance system based upon the number of grievances he had previously filed.  *See* Defs.' Mot. to Dismiss, Ex. C (ECF 17).  Given this record, Mr. Washington did not "properly" exhaust his grievance against Petters and Voorhees because he failed to comply with the requirements of the

_____

[7] Mr. Washington further stated in his deposition that he mailed the Confiscated Items Receipt "to the court" in another case and did not keep a copy. Washington Dep. at 59:25-60:22. Apparently, he is "a serial litigator who is well known in the Middle District of Pennsylvania." *Washington v. Durst*, No. 22-1243, 2023 WL 9052106, at *1 (M.D. Pa. Dec. 29, 2023).  But for purposes of this case, there is no dispute that he had the necessary documentation when he submitted his grievance against Petters and Vorhees and failed to attach it.

grievance process.   Summary judgment is therefore warranted on Mr. Washington's First Amendment retaliation claim against these defendants.[8]

### B.  Fifth Amendment

Turning now to Mr. Washington's remaining claims against the Defendants, Mr. Washington cannot maintain a Fifth Amendment claim.  The due process clause of the Fifth Amendment only restricts actions by federal officials.  *See Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983).  Because Defendants in this case are state actors, Mr. Washington's Fifth Amendment claim fails as a matter of law.  *See Hubbard v. Taylor*, 399 F.3d 150, 158 n.13 (3d Cir. 2005).  Fifth Amendment due process claims invoke "identical provisions of the Fourteenth Amendment," which does apply to the states, so Mr. Washington's claim is best addressed under the Fourteenth Amendment's due process clause.  *Id.*; *McSpadden v. Wolfe*, No. 07-1263, 2008 WL 910010, at *11 (E.D. Pa. Apr. 2, 2008), *aff'd*, 325 F. App'x 134 (3d Cir. 2009) (DuBois, J.) (citations omitted).

### C.  Eighth Amendment

Mr. Washington cannot maintain an Eighth Amendment claim either.  To establish an Eighth Amendment claim, a plaintiff must show that he was "denied basic human needs, such as food, clothing, shelter, sanitation, medical care, and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).  "The alleged destruction of personal property does not constitute a deprivation of the sort within the protection of the Eighth Amendment."  *Young v. Edward*, No. 17-1736, 2018 WL 4616245, at *3 (M.D. Pa. Sept. 26, 2018); *see Nadab v. Wetzel*, No. 20-3537,

---

[8] Defendants separately argue that the record would not in any event support relief, because the retaliation alleged is remote in time from his protected activity and evidence of retaliatory animus is missing.  As to Officer Vorhees, the argument likely has merit.  As to Officer Petters, Mr. Washington's testimony may suffice to create an issue of fact, but once again, I do not reach the merits because of the failure to properly exhaust.

2020 WL 6131247, at *4 (E.D. Pa. Oct. 16, 2020) (Quiñones Alejandro, J.); *Miller v. Ferguson*, No. 19-2456, 2019 WL 4140916, at *3 (E.D. Pa. Aug. 29, 2019) (Slomsky, J.). Consequently, summary judgment in favor of Defendants is warranted as to the Eighth Amendment claim.

### D. Ninth Amendment

The Ninth Amendment states that the "enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend IX. It is not clear how the Ninth Amendment applies to Mr. Washington's claims, and I am not aware of any authority that would provide a basis for such a claim as it relates to the loss or destruction of his personal property. *See Woodell v. Pa. Dep't of Corr. Sec'y of Corr.*, No. 18-4430, 2020 WL 2841380, at *15 (E.D. Pa. June 1, 2020) (Smith, J.); *Mayo v. Corrs. Emergency Resp. Team*, A. No. 18-4390, 2018 WL 6524247, at *4 (E.D. Pa. Dec. 12, 2018).

### E. Fourteenth Amendment

Mr. Washington claims that his due process rights were violated when his property was destroyed or confiscated. His due process claim fails, however, because he had an adequate post-deprivation alternative remedy through the Department of Corrections' grievance procedure.

The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. An incarcerated person's § 1983 claim based on "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

In Pennsylvania, the state prison system has established an internal grievance procedure through which the Commonwealth hears claims and, when deemed appropriate, provides remedies. Courts in this Circuit have consistently held that the Pennsylvania Department of

Corrections' grievance procedure, which was in effect at SCI-Graterford and SCI-Chester and used by Mr. Washington to file numerous grievances and appeals, provides an adequate post-deprivation remedy. *See, e.g.*, *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (finding this grievance process to be an adequate remedy); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (same). Here, Mr. Washington was provided with a post-deprivation remedy regarding the loss of his property in the form of the grievance system.

And even if the grievance system was inadequate, Mr. Washington cannot assert a plausible due process claim for intentional deprivation of property because Pennsylvania law also provides him with an adequate post-deprivation remedy – a state tort claim. *See Hudson*, 468 U.S. at 534-35; *McDuffie v. Varner*, No. 21-161, 2021 WL 2206301, at *3 (E.D. Pa. June 1, 2021) (Goldberg, J.); *Morales v. Beard*, No. 09-162, 2009 WL 2413425, at *5 (W.D. Pa. July 31, 2009); *Forgione v. SCI Graterford*, No. 19-2189, 2019 WL 2268960, at *1 (E.D. Pa. May 24, 2019) (Slomsky, J.). Because Mr. Washington had adequate post-deprivation remedies available to him, his due process claim fails as a matter of law.

### F. Plaintiff's Motions

Mr. Washington's Motion for Summary Judgment, ECF 108, contains a lengthy discussion of various legal doctrines and cases, which I have considered in resolving Defendants' Motion for Summary Judgment. The arguments he raises do not suffice to forestall judgment against him. His Motion to Strike and Sanction, ECF 102, mirrors many prior motions he has filed expressing his dissatisfaction with filings from the defense, and does not have substantive legal merit. His Motion for Clarification, ECF 105, is in substance a request for mediation, again mirroring prior motions. In fact, upon re-assignment of this matter to my docket, acting through a law clerk, the Court made multiple overtures to the Office of Attorney General suggesting that return of Mr. Washington's property would be the most practical resolution of his claims, but those attempts

were not met with success.  Thereafter, Defendants did not respond affirmatively to any efforts toward settlement.  The Court has therefore ruled.

**V.      Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment will be granted, and Mr. Washington's denied.  An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
